FILED
CLERK, U.S. DISTRICT COURT
JUL 23, 2025
CENTRAL DISTRICT OF CALIFORNIA
BY: JG  DEPUTY

Name: Andrew Wyles Waters

Address: 803/3 Twenty-Fourty Avenue
Palm Beach, Queensland, 4221, Australia

Phone: _____

Fax: _____

In Pro Per

Hearing Date: August 7, 2025
Time: 8:30 AM
Courtroom: 9D

Judge: George H. Wu

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,
vs.

ANDREW WYLES WATERS,

Defendant,

and

HELEN Q. WATERS,

Relief Defendant.

CASE NUMBER: 2:23-cv-06799 GW (JCx)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DIRECT CLERK'S ENTRY OF DEFAULT PURSUANT TO FED. R. CIV. P. 55

TITLE OF PLEADING

CV-127 (09/09)  PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

This matter, now entering its second year, is not grounded in legitimate investor concern, evidence-based regulatory suspicion, or financial misconduct. Rather, it was instigated by a calculated campaign of retaliation and misinformation led by a former director with a personal vendetta. This individual, after failing to exert control internally, publicly declared his intent to "bring us down" and "use the SEC" as a tool of retribution. He disseminated fabricated allegations to investors, the media, and vendors—not to protect the investing public, but to pursue a private grudge.

At no time prior to this campaign had any investor lodged a formal or informal complaint against the company, myself, or my wife. No legal notice, demand, or inquiry preceded this orchestrated attack. The SEC's investigation, and the litigation that followed, rests on a narrative devoid of independent substantiation. No adverse audit findings. No regulator-issued warnings. No investor disputes. Simply, no foundation—beyond one individual's hostility.

Since the outset of the investigation, my wife, Helen Waters, and I have demonstrated transparency and diligence. We responded promptly to subpoenas, submitted to interviews, waived attorney–client privilege to enable access to company counsel and records, and produced all documents within our possession or reasonably obtainable through good-faith effort. Contrary to the SEC's characterisation, our conduct has not been evasive—it has been cooperative, consistent, and constrained only by limited resources and technical difficulties, not by unwillingness.

Any procedural deficiencies—such as the absence of a sworn declaration in specific form—stemmed from misunderstandings, technical barriers, and service failures, not from intentional disregard of court orders. We remain committed to a fair resolution on the merits and have continuously engaged in good-faith compliance with our obligations.

1. The SEC's complaint relies almost entirely on the statements of a single disgruntled individual—a former director who, after being denied control within the company, publicly declared his intention to "bring us down" and to use the SEC as a weapon in a personal campaign of retribution. His actions amounted to blackmail. He contacted multiple investors and actively encouraged them to submit complaints to the SEC—despite none of them having done so independently.

Prior to this orchestrated campaign, no investor had contacted me, my wife, the company (EPG), or the SEC—formally or informally—with any concerns or complaints. No audit findings, regulator notices, or investor disputes existed. The SEC's investigation was not initiated due to independent regulatory concern but was triggered solely by the efforts of this individual to generate controversy where none previously existed.

The allegations of misusing investor funds or financial misrepresentation stem from this same unverified narrative. There is no third-party substantiation—no audit, declaration, or credible evidence from any independent source. The SEC's case rests entirely on this former director's assertions, not on objective financial facts.

The inclusion of Helen Waters as a Relief Defendant is equally baseless. She has never been involved in management, had no access to corporate funds, and did not benefit from any alleged wrongdoing. Her only connection was ownership of a Clear Trust share certificate, which was fully disclosed. She has cooperated at every stage—sitting for interviews and producing documents—yet the SEC continues to target her without legal or factual justification. This tactic appears more aligned with coercion than lawful recovery.

2. From the beginning, we have made every effort to comply with the SEC's discovery demands. I personally participated in a full-length interview under subpoena, waived privilege over attorney communications, and coordinated the collection and production of responsive materials from our own records and from external third parties such as EPG. We identified individuals likely to hold further relevant information and provided their details to the SEC.

The assertion that we failed to cooperate or withheld documents is plainly incorrect. We did not possess additional records beyond those already disclosed. We did not refuse to comply with court orders. Instead, we acted in good faith and within the limits of our technical capabilities.

We acknowledge the May 16, 2025 Order (Dkt. 119), which required formal written responses and a declaration. However, several factors contributed to the delay in complying with that order, none of which were willful:

a) Service Failures: Despite our agreement to receive filings via email, we did not receive the order.
b) Technical Access Issues: Our PACER account was non-functional. The Clerk's Office confirmed difficulties locating our access credentials.
c) Good-Faith Assumptions: We believed that our previous interviews, document productions, and privilege waivers satisfied our discovery obligations.
d) Lack of Notice of Deficiency: At no point were we informed that the format or content of our compliance efforts was insufficient.

3. Following the May 16, 2025 Order, we undertook additional steps to comply. I produced every document in my custody and made further inquiries to third parties. We also submitted to prior interviews and disclosed information already available to the SEC through separate subpoenas. The absence of a signed declaration was not a deliberate act of defiance—it was the result of not being informed that such a formal document was required beyond our verbal and written cooperation.

Had we been alerted to the specific deficiency or served the order properly, we would have acted promptly to cure the issue. We did not seek an extension because we did not know one was needed. We acted earnestly, not evasively.

4. The striking of our pleadings on June 30, 2025 (Dkt. 122) and the SEC's request for entry of default constitute a disproportionate response. Federal courts disfavour default judgments. The Ninth Circuit, in Falk v. Allen, 739 F.2d 461 (9th Cir. 1984), held that default is appropriate only where the defendant's conduct is culpable, the plaintiff would be prejudiced by continued proceedings, and there is no meritorious defense. None of these conditions are present here.

We have acted in good faith. The SEC has not identified actual prejudice. And we have raised meritorious, fact-based defences. The SEC's unwillingness to engage in court-ordered mediation—on grounds that it lacks sufficient evidence—further demonstrates the weakness of its case and contradicts its demand for a dispositive remedy.

5. The SEC's continued pursuit of Mrs. Waters, despite her non-involvement in business operations and complete cooperation, is not supported by law. Relief Defendants must have received funds traceable to wrongdoing and have no legitimate claim to them. See SEC v. Cherif, 933 F.2d 403 (7th Cir. 1991). Mrs. Waters meets neither condition.

She has not been enriched. She has no connection to the company's finances or governance. Her inclusion serves only to exert pressure through association, not to redress actual harm. Courts have routinely rejected the use of Relief Defendant status as a coercive tool absent evidence of improper gain.

6. Judge Wu ordered mediation in or around February–March 2025. We embraced that opportunity. The SEC declined, claiming insufficient evidence to mediate effectively. This position is internally inconsistent with its claim that it possesses sufficient evidence for default judgment.

Mediation was not merely encouraged—it was ordered. The SEC's refusal to comply undermines the integrity of the process and suggests a strategic use of procedure to avoid having to substantiate its claims. Default should not reward this kind of avoidance.

7. WHEREFORE, Defendants Andrew Wyles Waters and Helen Q. Waters respectfully submit that this matter has been driven not by the interests of justice or investor protection, but by the retaliatory tactics of a former insider. Despite limited resources and technical challenges, we have met our obligations in good faith. Any procedural lapses were the result of confusion and access barriers—not willful defiance.

Accordingly, we respectfully request that the Court:

a) Deny the SEC's Motion for Clerk's Entry of Default;
b) Vacate the June 30, 2025 Order striking our pleadings or grant leave to refile responsive submissions;
c) Compel the SEC to participate in the previously ordered mediation;
d) Order the SEC to produce withheld discovery or justify its invocation of privilege on the record;
e) Dismiss Relief Defendant Helen Q. Waters from the proceeding for lack of any evidence of unjust enrichment.
f) And grant such other and further relief as the Court deems just and proper.

Such relief is necessary to preserve the principles of fairness, prevent procedural injustice, and ensure that this matter is resolved based on facts—not fabricated claims or administrative missteps.

Dated: 7/22/2025

Andrew Wyles Waters
Defendant

Helen Q. Waters
Relief Defendant